UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| AFFCO New Zealand, Ltd., a Foreign corporation | CIVIL ACTION NO.: :12-CV-21325-JLK |
| Plaintiff, | |
| vs. | |
| American Fine Foods Corp., a Foreign corporation | |
| Defendant. | |

### DECLARATION OF RACHEL ANNE WEBSTER

My name is Rachel Anne Webster and I make this Declaration based on my personal knowledge.

1. I am employed by Plaintiff AFFCO New Zealand, Ltd. ("AFFCO") a New Zealand Corporation as in-house Legal Counsel.
2. I have been employed by AFFCO for one year and 2 months in that position.
3. I deal with legal matters having to do with the New Zealand and International marketing of meat and meat products by AFFCO.
4. In addition, I have examined the books, as well as corporate and public records of AFFCO, including as part of preparation of discovery responses during the course of this litigation.
5. I have reviewed and am familiar with the document comprising a settlement agreement between the parties and entitled "Undertaking" dated 10 January 2001, and its Exhibits A – H, which were attached to the Complaint as Exhibit 1 and accompanying this Affidavit as Exhibit 1.
6. Plaintiff AFFCO is a corporation organized under the laws of New Zealand, with its principal

1

place of business at State Highway 1, Horotiu, Waikato, New Zealand. Plaintiff was formed as a New Zealand based farmers' cooperative.

7. AFFCO was incorporated in Auckland, New Zealand in 1903 - 1904.

8. AFFCO's headquarters has moved from Auckland, New Zealand to Hamilton, New Zealand.

9. Auckland Farmer's Freezing Company, Limited. has been exporting meat products from New Zealand to British ports since the early part of the twentieth century (Exhibit 2, Document AFFCO 100197) having changed its name to Auckland Farmer's Freezing Cooperative Limited and then to Affco New Zealand Limited and then Affco Limited. AFFCO shipped primarily meat from sheep, cattle and pigs for many years, to many markets. AFFCO began to ship goat meat from the autumn of 1947 for the UK, Fiji and eventually the Middle East markets (Exhibit 3, Documents AFFCO 100000, 100015 – 100019, 100111) and was represented at a Major Food Fair in Saudi Arabia in February, 1983 (Exhibit 4, Documents AFFCO 100194 – 100196).

10. As business needs and costs dictate, or as knowledge of potential sales of competitors becomes known, decisions are made on the part of AFFCO to expand its trademark registration portfolio by filing, from time to time, trademark applications in new or different territories (both regions and countries) and this can include new or changed countries that have evolved politically to offer trademark protection(s).

11. Contemplated future action by AFFCO is consistent with the Undertaking's drafting to ensure American Fine Foods' continuing obligation to amend trademark registrations, such as through paragraphs E (6) that provided that American Fine Food would "never in the future use or register" AFFCO, E (8)'s "will not object to, attack, or seek to cancel any new application to register or registration" of AFFCO, and E (14) that provided that American Fine Food would not "hinder" AFFCO's registration in the Middle East ("agrees not to challenge or hinder

2

AFFCO's use, continuing use, or registration of the mark AFFCO (either by itself or in conjunction with a logo) in the Middle East "). These provisions offer no time requirements and are open-ended. See also Paragraph E (9) of the Undertaking, Exhibit 1, providing that American Fine Food will not use domain name, email address, in territories (both regions and countries). See also Paragraph E (10) of the Undertaking, Exhibit 1, providing that American Fine Food will not object to AFFCO's domain name, email address in territories (both regions and countries). See also Paragraph E (7) of the Undertaking, Exhibit 1, providing for American Fine Food's non-use [of mark(s)].

12. AFFCO's historical experience with "registering" begins with the actual filing of the application with the governmental entity in charge of registration. AFFCO would historically comply with this registration as their marketing and protection needs required. Registration is typically permissive and not a prerequisite to sales.

13. AFFCO's historical experience with "using" their trademark is separate from the question of registration and has involved marketing and shipping to a variety of territories, with and without having prior trademark registration in its name.

14. While the Undertaking provided in Paragraph E(3)(iv) that American Fine Food was to amend its registrations, this provision only became material at such point in time as American Fine Food's failure to amend blocked AFFCO's trademark application.

15. On September 20, 2008, AFFCO expressed interest in securing trademark registration in Saudi Arabia for its mark and filed an application to register AFFCO as a trademark for meat and meat products; milk and other daily products, oils and fats prepared for human consumption in the country. Exhibit 5.

16. This decision was based on AFFCO's long use of its trademark in Saudi Arabia through its sales in the region, its understanding of the competitive environment and administrative and

budgetary considerations at the time of filing..

17. AFFCO was aware that American Fine Foods performed its obligations with respect to the US Trademark Office, and AFFCO's Marketing Department assumed that American Fine Foods was at that point in compliance with its amendments and applications for trademark registrations consistent with the Undertaking but having no knowledge of what other countries there were in which American Fine Food had applications or registrations.

18. On February 2, 2009 AFFCO's application was rejected by the Saudi Arabian office because of American Fine Food's preexisting Saudi Arabian registration of the AFF/AFFCO mark and American Fine Food's subsequent failure to amend their trademark as required in the Undertaking.

19. The February 2, 2009 rejection was the first time AFFCO learned, that American Fine Food was maintaining a Saudi Arabian trademark registration that included meat, fowl or fish, or products containing meat, fowl or fish.

20. The Saudi Arabian's office action rejecting AFFCO's application on February 2 2009, was the first date AFFCO learned that American Fine Food had failed to delete or expressly exclude meat, fowl or fish, or products containing meat, fowl or fish from its Saudi Arabian trademark registration.

21. Thereafter, AFFCO asked American Fine Food to amend its Saudi Arabian registration by the letter of June 5, 2009, providing:

> "... the American Fine Foods Saudi Arabian registration has not yet been amended to exclude meat and meat products, as required by the parties' Undertaking dated January 10, 2006. We have also not received your client's confirmation that it has similarly amended its registrations and applications for the trademarks AFFCO or AFF in other countries pursuant to the Undertaking. Please confirm by no later than June 12, 2009 that American Fine Foods has completed the amendment of their Saudi Arabian registration, as well as all other amendments required pursuant to the Undertaking." Exhibit 6.

4

22. In response to the request for amendment, American Fine Food's US counsel responded indicating that they did not know whether or not American Fine Food had complied, instead stating:

    > "We have been awaiting a response from our attorneys in Saudi Arabia regarding this matter. We will provide a supplemental response to your letter of June 12, 2009 as soon as we receive communications from our attorneys in Saudi Arabia." Exhibit 7.

23. Until the February 2, 2009 rejection of AFFCO's Saudi Arabian trademark application based on American Fine Food's blocking registration, there had been no adverse effect on AFFCO's right to register its mark AFFCO in Saudi Arabia. This, because no registration was had by AFFCO in Saudi Arabia prior to its attempted application.

24. AFFCO also exhausted its administrative remedies in Saudi Arabia by seeking reconsideration of the rejection by the Saudi trademark commissioner and by filing a court action, and was unsuccessful in overcoming American Fine Food's blocking registration.

25. The blocking of AFFCO's Saudi trademark application and subsequent failure by American Fine Food to amend its existing registration (to allow for coexisting Saudi registrations) constituted a material breach of the Undertaking's provisions at the time that blocking occurred.

26. The presence of American Fine Food's Saudi Arabian trademark registration hindered and still hinders AFFCO's registration in Saudi Arabia.

27. Only when AFFCO's Saudi trademark registration application was blocked did American Fine Food's failure to amend become germane to the Undertaking's provisions.

28. Under the Undertaking American Fine Food was obligated to cease all use of the mark AFFCO for the sale of meat and meat products in the territories (regions and countries) incorporated by reference to the Complaint's Exhibit 1's own Exhibit H, as well as destroy existing packaging, advertising and promotional materials.

29. With respect to discontinuance of the use of the AFF mark by American Fine Food in the territories (regions and countries) under paragraphs E (4) and E (5) and the destruction of packaging, AFFCO relied on the assurances of counsel for American Fine Food in Exhibit 2 that American Fine Food had taken the active steps of destroying existing packaging, advertising and promotional materials: "This letter is in response to the letter of March 8, 2006 from Elizabeth Linford regarding a request for a written confirmation pursuant to section E (5) of the Undertaking. This letter confirms that American Fine Food Corp. has destroyed of [sic] all packaging, advertising and promotional materials of any kind bearing the trademark AFFCO for meat and meat products." (emphasis added). See Exhibit 8. These active steps of destruction were confirmed to have occurred within the deadline of 90 days from January 10, 2006, namely before April 10, 2006.

30. The first indication that American Fine Food had not destroyed packaging and marketing materials was in the letter of October 30, 2009, Exhibit 9 stating, in contradiction to Exhibit 5's statement that all materials had been destroyed, "For over twenty years, American Fine Food Corporation has packaged meat and processed meat products such as fish and chicken in tinned cans." (emphasis added).

31. American Fine Food also admits that its distributor in Saudi Arabia sells canned meats under the Saudi Arabian trademark registration AFFCO owned by American Fine Food. See Answer to Complaint ¶ 24.

32. American Fine Food materially breached the Undertaking's provisions as it had not ceased the sale of meat and meat products in the territories (regions and countries) incorporated by reference to the Complaint's Exhibit 1's own Exhibit H.

The undersigned being hereby warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, declares that the statements made

of his/her own knowledge are true and that all statements made on information and belief are believed to be true.

Dated: 17/9/2012

Rachel Anne Webster

Respectfully submitted,

/s/ John O. Sutton
John O. Sutton
Florida Bar. No. 245380
john@jamersonsutton.com
JAMERSON & SUTTON LLP
2655 Le Jeune Road
Penthouse 2
Coral Gables, FL 33134
Tel: (305) 448-1295
Fax: (305) 446-5236

Of Counsel:

David C. Brezina
Burton S. Ehrlich
Ladas & Parry LLP
224 S Michigan Ave.
Suite 1600
Chicago, IL 60604
(312) 427-1300