## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 12-21325-CIV-KING

AFFCO NEW ZEALAND, LTD,
a foreign corporation,

      Plaintiff,

v.

AMERICAN FINE FOODS CORP.,
a U.S. corporation,

      Defendant.

_____/

## ORDER GRANTING DEFENDANT
## SUMMARY JUDGMENT ON COUNTS II AND IV

**THIS MATTER** comes before the Court upon Defendant's Motion for Summary

Judgment (DE #25), filed July 31, 2012. Therein, Defendant seeks summary judgment on

all four counts in Plaintiff's Complaint (DE #1). The Court is fully briefed on the matter.[1]

Upon careful consideration of the record and the briefings, the Court finds that

Defendant's Motion should be granted as to Counts II and IV and denied as to Counts I

and III.

### I. BACKGROUND

This is an action for breach of contract arising from an agreement the parties

entered into during a trademark opposition proceeding. Plaintiff AFFCO New Zealand

---

[1] Plaintiff filed a Response (DE #40) on September 21, 2012. Defendant filed a Reply (DE #44) on
October 1, 2012.

Ltd. ("AFFCO"), a New Zealand corporation, has exported meat and meat products since the early 1900s and has been selling lamb, mutton, and beef in Saudi Arabia for three decades. Since the late 1980s, Defendant American Fine Foods Corp. ("American"), a New York corporation with its principal place of business in Florida, has sold a variety of food products overseas, including canned fish and chicken in Saudi Arabia. The following facts are undisputed.[2]

On September 24, 2002, American filed with the United States Patent & Trademark Office ("USPTO") U.S. Trademark Application No. 76/463,007 for the mark "AFFCO & Design." The application sought protection for use of the mark in connection with services and export services related to certain food products.[3] The application alleged that American had used the mark for services related to the export of food products since at least 1988. AFFCO, which owned the trademark "AFFCO"[4] in connection with "meat and meat products, processed meat, beef jerky and meat balls" opposed the application. To settle the opposition, AFFCO and American entered into an agreement—known as the Undertaking—on January 10, 2006.

In the Undertaking, American expressly agreed to exclude meat, fowl, or fish products from its services and to amend Application No. 76/463,007 accordingly.

---

[2] These facts are taken from Plaintiff's Amended Complaint (Am. Compl., DE #6), Defendant's Statement of Undisputed Material Facts in Support of American Fine Food Corp.'s Motion for Summary Judgment (Def. SOF, DE #26), Plaintiff's Statement of Uncontested Facts (Pl. SOF, DE #41), and the exhibits attached thereto.

[3] Those products were: "cereals, mayonnaise, salad dressings; sauces, namely, hot sauce, BBQ sauce, steak sauce worcestershire sauce; spices/salt, mustard, vinegar, food coloring, vegetable shortening, canned vegetables, beans, peanut butter, pickles, canned juices, fruit pie fillings, honey, bread crumbs, potato flakes; paper products, namely, cups, plates, foam cups, plastic cups; lighter fluid." (DE #43-7, p. 21).

[4] U.S. Trademark Registration No. 2,474,722.

Additionally, American agreed, in Paragraph E(3)(iv), that "no later than January 23, 2006" it would amend its foreign applications and registrations in countries where AFFCO held a valid mark. Those territories, identified in Exhibit H to the Undertaking, included all countries in North America, Europe, Russia, Northern Asia, Southeast Asia, and the South Pacific Islands, and also New Zealand, the United Arab Emirates, Jordan, and Saudi Arabia. The Undertaking further compelled American to cease all use of the mark AFFCO in those territories, Paragraph E(4); to "never in the future distribute, market or sell meat, fowl or fish" products in those territories and to destroy all nonconforming packaging and advertising, Paragraph E(5); to "never in the future use or register the mark AFFCO" in the United States or any Exhibit H territory, Paragraph E(6); and "not to challenge or hinder AFFCO's use, continuing use; or registration of the mark AFFCO (either by itself or in conjunction with a logo) in the Middle East in relation to meat, fowl or fish, or products containing meat, fowl or fish." Paragraph 14. (DE #6-1). In return, and upon American amending its federal application, AFFCO promised to drop its opposition before the USPTO Trial and Appeal Board. In the event the agreement was breached, the Undertaking indicated that Florida law would govern.

Pursuant to the Undertaking, AFFCO withdrew its opposition, and, on March 30, 2006, the USPTO issued U.S. Trademark Registration No. 3,097,027 to "American Fine Food Corp., United States Individual." After the required five years of use, American filed Combined Declarations of Use and Incontestability on February 28, 2012. The United States Patent & Trademark Office acknowledged and accepted the declarations on March 30, 2012.

American, however, did not amend its Saudi Arabian Trademark Registration No. 671-12 for goods in International Class 29.[5] Also, though American's counsel asserted in a March 13, 2006 letter to AFFCO's counsel that American had "destroyed of [sic] all packaging, advertising and promotional materials of any kind bearing the trademark AFFCO for meat and meat products" (DE #42-9), American's distributor in Saudi Arabia continued to sell meat and meat products there under the AFFCO mark.

On September 20, 2008, AFFCO filed an application in Saudi Arabia to register AFFCO as a trademark for meat and meat products, milk and other dairy products, oils, and fats. AFFCO's application was rejected by the Saudi Arabian trademark office on February 2, 2009 because of American's existing registration of the AFFCO mark. AFFCO alleges that this date was the first time it learned that American had not amended its Saudi Arabian trademark registration as required by the Undertaking. Previously, AFFCO "assumed" that American had amended its applications and registrations. (Pl. SOF, DE #41).

AFFCO unsuccessfully sought relief in Saudi Arabia. Then, on November 16, 2010, AFFCO sued American in the Southern District of Florida, alleging causes of action for trademark infringement, breach of contract, and specific performance. *See AFFCO New Zealand Ltd. v. American Fine Food Corp.*, No. 10-24105-CIV-KING ("Dismissed Action"). Thirteen months later, AFFCO sought leave to amend that complaint by adding a new trademark cancellation claim against American and to

---

[5] This class includes meat, fish, poultry, and game; meat extracts; preserved, dried, and cooked fruits and vegetables; jellies, jams, and fruit sauces; eggs, milk, and milk products; edible oils and fats; margarine, butter, and shortening; and peeled and canned tomatoes.

supplement facts regarding the trademark infringement claim to plead around issues raised in American's motion for partial summary judgment. On January 26, 2012, the Court denied AFFCO's motion as untimely (Dismissed Action, DE #24) and, on February 23, 2012, also denied AFFCO's motion to extend all scheduling deadlines (Dismissed Action, DE #28). On April 2, after the March 30 deadline to file the pre-trial stipulation passed without the parties' compliance, the Court dismissed the case without prejudice. (Dismissed Action, DE #30).

AFFCO filed the above-styled action four days later, on April 6, 2012, and amended its complaint once on May 8, 2012. Plaintiff's Amended Complaint (Am. Compl., DE #6) pleads four claims against American: breach of contract (Count I), specific performance pursuant to the Undertaking (Count II), declaration that American no right of action in Saudi Arabia (Count III), and cancellation of U.S. Trademark Registration No. 3,097,027 (Count IV). Defendant American seeks summary judgment on all counts.

## II. LEGAL STANDARD

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex*, 477 U.S. at 323–24.

The moving party bears the burden of pointing to the part of the record that shows

the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (holding that the nonmoving party must "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact.").

"Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts." *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. *See id.* at 252. If the evidence offered by the nonmoving party is merely colorable or is not significantly probative, summary judgment is proper. *See id.* at 249–50.

### III. DISCUSSION

Defendant's Motion for Summary Judgment makes three primary arguments. First, Defendant claims that Counts I, II, and III of Plaintiff's Complaint are barred by the applicable statutes of limitations. Second, Defendant argues that the Court lacks subject

matter jurisdiction over Count III and, alternatively, should not adjudicate Plaintiff's claim based on comity and equity. Third, Defendant alleges that Defendant's U.S.-registered mark has obtained incontestable status and thus Plaintiff cannot seek cancellation (Count IV). The Court addresses each argument in turn.

## A. *Statute of Limitations as to Counts I, II, and III*

Counts I, II, and III each plead causes of action related to Defendant's alleged breach of the Undertaking. Count I seeks damages for breach of contract; Count II seeks specific performance against American; and Count III seeks a declaration of AFFCO's rights in Saudi Arabia under the agreement. The Florida Statutes expressly indicate that the limitations period is five years for a breach of contract claim, Fla. Stat. § 95.11(2)(b), and one year for specific performance against a party to a contract, Fla. Stat. § 95.11(5)(a). Because AFFCO's request for declaratory relief seeks a declaration of its rights under the Undertaking, there is a five-year statute of limitations for this claim.[6]

The statute of limitations for contract actions begins to run when "the last element constituting the cause of action occurs." Fla. Stat. § 95.031(1). The elements of a breach of contract claim under Florida law are a valid contract, a material breach, and damages. *See Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. Dist. Ct. App. 1992)). "To constitute a

---

[6] Actions for declaratory relief do not have their own statute of limitations period. *Rosenbaum v. Becker & Poliakoff, P.A.*, No. 08-81004-CIV-KAM, 2010 WL 376309, at *8 (S.D. Fla. Jan. 26, 2010). Instead, because "declaratory relief is a mere procedural device by which various types of substantive claims may be vindicated, it is instead the substance of the right sued upon that governs the applicable limitations period." *Id.* (internal quotation marks omitted); *see also Nat'l Franchisee Ass'n v. Burger King Corp.*, 715 F. Supp. 2d 1232, 1245, n. 8 (S.D. Fla. 2010) ("Courts therefore must 'borrow the forum state's limitations period for the most analogous state law cause of action.'") (quoting *Harrison v. Digital Health Plan*, 183 F.3d 1235, 1238 (11th Cir. 1999)).

vital or material breach a defendant's nonperformance must be such as to go to the essence of the contract; it must be the type of breach that would discharge the injured party from further contractual duty on his part." *Beefy Trail, Inc. v. Beefy King Intern., Inc.*, 267 So. 2d 853, 857 (Fla. Dist. Ct. App. 1972). A breach is not material if it is of a minor contractual duty. *Id.* Florida law does not provide a discovery rule tolling the accrual of the limitations period. *Federal Ins. Co. v. Southwest Florida Retirement Center, Inc.*, 707 So. 2d 1119, 1122 (Fla. 1998). "[A]ctions for breach of contract are barred five years after the cause of action accrued regardless of whether the plaintiff knew that it had a claim." *Beck*, 175 F.3d at 914

### i. Breach of Contract and Declaratory Relief

In the above-styled action, it is undisputed that Defendant American breached the Undertaking by not amending its registration in Saudi Arabia. Defendant argues that this breach was material on January 24, 2006; Plaintiff counters that it was not material until February 2, 2009, when the Saudi Arabian trademark office blocked Plaintiff's application. The Court finds that a material breach occurred when Defendant failed to amend its registration by January 23, 2006 as explicitly required by Paragraph E(3)(iv) of the Undertaking.

Of the Undertaking's 16 provisions, Defendant's promise to amend its U.S. application and all foreign applications and registrations was one of only two provisions to be given an explicit date for performance. Time was of the essence. *See Sublime, Inc. v. Boardman's Inc.*, 849 So. 2d 470, 471 (Fla. Dist. Ct. App. 2003) ("As a general rule, time is considered to be of the essence where an agreement specifies, or where such may

be determined from the nature of the subject matter of the contract, or where treating time as non-essential would produce a hardship, or where notice has been given to the defaulting party requiring that the contract be performed within a stated time, which must be a reasonable time according to the circumstances."). Additionally, Defendant's promise to amend applications and registrations was vital to the agreement; breaching this duty would have discharged Plaintiff of its obligation to withdraw its trademark opposition. Thus, the breach was material as of January 24, 2006.

However, there exists, at the very least, a material issue of fact as to when Plaintiff suffered damages from Defendant's breach. If Plaintiff did not suffer damages until its Saudi Arabian application was rejected on February 2, 2009, then the five-year statute of limitations for breach of contract and for declaratory relief does not bar Plaintiff's claims. In taking all facts in the light most favorable to the non-moving party, the Court cannot find, as a matter of law, that Plaintiff suffered damages from Defendant's breach outside of the statutory period for a breach of contract action. Additionally, questions of material fact remain on Plaintiff's allegations that Defendant breached other provisions of the Undertaking.[7]

Accordingly, the Court denies Defendant's Motion for Summary Judgment as to Count I and Count III.

---

[7] Plaintiff raises an additional question, as to whether the filing of the Dismissed Action, tolled the statute of limitations because it put Defendant on notice of Plaintiff's claims. Because the Court finds that an issue of material fact exists as to when the limitations period began running, it need not address this question.

### ii. Specific Performance

The statute of limitations for Plaintiff's specific performance claim was one year and began running no later than February 2, 2009 on the claims related to Plaintiff's rejected Saudi Arabian application and possibly earlier on the claims involving the nonconforming packages that Plaintiff alleges Defendant did not destroy.[8] Accordingly, Plaintiff's window to sue for specific performance closed no later than February 2, 2010. The instant action was filed April 6, 2012—more than two years beyond that deadline— and even the Dismissed Action, filed November 16, 2010, was outside the statute of limitations for specific performance of the Undertaking. The question then becomes whether the limitations period should be tolled for Plaintiff.

Florida law provides nine bases for tolling a statute of limitations. *See* Fla. Stat. § 95.051. The statutory tolling list is exhaustive, *see* Fla. Stat. § 95.051(2); *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1075 (Fla. 2001), and none of the nine reasons are implicated by the facts of this case. However, Florida courts have also tolled the statute of limitations when equity requires it. Equitable "tolling is an extraordinary remedy which should be extended only sparingly." *Justice v. United States*, 6 F.3d 1474, 1480 (11th Cir. 1993) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S. Ct. 453 1990). The doctrine "focuses on the plaintiff's excusable ignorance of the limitations period and on [the] lack of prejudice to the defendant." *Machules v. Dep't of Admin.*, 523 So. 2d 1132, 1134 (Fla. 1988) (citing *Cocke v. Merrill Lynch & Co.*, 817 F.2d 1559, 1561 (11th Cir. 1987)). Florida courts have equitably tolled the limitations period "when the

---

[8] Again, the time the statute of limitations began to run depends on when AFFCO suffered damages.

plaintiff has been misled or lulled into inaction, has in some extraordinary way been prevented from asserting his rights, or has timely asserted his rights mistakenly in the wrong forum." *Machules*, 523 So. 2d at 1134. The burden of establishing that the limitations period should be tolled belongs to the plaintiff. *Credit Suisse Sec. (USA) LLC v. Simmonds*, 132 S. Ct. 1414, 1419 (2012).

In the above-styled action, Plaintiff AFFCO has not met this burden. Plaintiff's briefings aver that AFFCO was aware that Defendant American had materially breached the Undertaking no later than February 2, 2009. Though Plaintiff claims that Defendant misled Plaintiff in regards to having performed under their agreement before that time, Plaintiff has not accused Defendant of lulling Plaintiff into inaction; nor has Plaintiff claimed that it was prevented from asserting its rights by some extraordinary means. Plaintiff simply argues that its claims, as part of the Dismissed Action, initially were filed within five years of the formation of the Undertaking altogether, let alone any breach thereof, and thus should not be time-barred.

However, and without addressing whether the Dismissed Action served to toll the running of the statute of limitations, those facts are only a potential defense to the Florida Statutes' five-year limitations period for breach of contract actions. They do not apply to the one-year statute of limitations for specific performance. The Dismissed Action was filed more than 12 months after the latest moment when Plaintiff's cause of action for specific performance could have accrued. Plaintiff has failed to demonstrate that equity demands permitting its specific performance claim and, therefore, Plaintiff is not entitled to equitable tolling.

Accordingly, Count II is time-barred and Defendant is entitled to summary judgment.

## B. *Count III Appropriate for Adjudication?*

Defendant also urges the Court to refuse to adjudicate Count III on two additional grounds: Plaintiff has not properly pled a justiciable controversy and, regardless, the circumstances do not warrant extending the Lanham Act to reach Defendant's activities in a foreign country.

### i. Plaintiff Pleads an Active Controversy and This Court has Jurisdiction

Defendant argues that by not invoking either the federal Declaratory Judgment Act, 28 U.S.C. § 2201, or Florida's Declaratory Judgment Act, Fla. Stat. § 86.011, Plaintiff failed to allege that the Court has subject matter jurisdiction over this claim. Additionally, Defendant argues that there is no present case or controversy between Plaintiff and Defendant. The Court finds these arguments unavailing.

First, though Plaintiff's Amended Complaint does not invoke the declaratory judgment statutes, Plaintiff pleads all necessary statutory elements under Florida and federal law. *See Trianon Condominium Ass'n, Inc. v. QBE Ins. Corp.*, 741 F. Supp. 2d 1327 (S.D. Fla. 2010); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S. Ct. 764 (2012). Additionally, Count III of the Amended Complaint includes "a short and plain statement of the claim showing that the pleader is entitled to relief" and Plaintiff's demand for relief, as required by Federal Rule of Civil Procedure 8. It is more than sufficient to give Defendant notice of the basis for Plaintiff's claim and thus satisfied pleading requirements.

Second, Defendant oversimplifies the matter before the Court when it asserts that "AFFCO does not allege any legitimate interest it may have that is in dispute with American [because] American currently holds a valid trademark in Saudi Arabia, and AFFCO's trademark application has been denied by Saudi Arabian officials." (DE #25, p. 9). Plaintiff does not seek a declaration from this Court that Saudi Arabian officials erred when they denied Plaintiff's trademark application. Count III prays for an interpretation of the Undertaking and declaration that Defendant "is forever barred from challenging or hindering AFFCO's use, continuing use, or registration" of the AFFCO mark in relation to meat, fowl, and fish products in the Middle East. This satisfies the standard articulated by the Supreme Court: "Our decisions have required that the dispute be "definite and concrete, touching the legal relations of parties having adverse legal interests"; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *MedImmune*, 549 U.S. at 127 (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S. Ct. 461 (1937)). Because Defendant continues to use its mark in Saudi Arabia, in contravention of the Undertaking, the controversy is definite and concrete. For these reasons, the Court finds that Plaintiff sufficiently pleaded a justiciable controversy.

### ii. Extraterritorial Concerns are Not Implicated by a Contract Action

Finally, Defendant argues that this Court should refuse to adjudicate Count III because Plaintiff has not established that the circumstances warrant extraterritorial application of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and because principles of

comity and equity encourage the Court's restraint. However, Defendant's arguments are misplaced.

Significantly, Plaintiff does not seek extraterritorial application of the Lanham Act and, thus, the factors articulated in *Steele v. Bulova*, 344 U.S. 280 (1952), are irrelevant. Count III is a contractual action arising within the trademark context; there is no trademark infringement claim. Plaintiff seeks a declaration that Defendant remains in material breach of the Undertaking unless and until it amends its Saudi Arabian registration, ceases any use of the mark in that territory, and refrains from challenging or hindering Plaintiff's use of the mark there. The fact that Saudi Arabian officials rejected Plaintiff's application and have permitted Defendant's registration is immaterial to the Court determining whether Defendant, a New York corporation with its principal place of business in Florida, remains in material breach of the Undertaking. Thus, the Lanham Act is not implicated and thus neither are the *Bulova* factors, which guide the extraterritorial application of U.S. trademark law. *Bulova*, 344 U.S. at 282. Moreover, the cases that Defendant cites in support of its proposition that the Court should refuse to adjudicate Count III based on comity and equity are factually inapposite; among other factual differences, those cases dealt with trademark infringement where there was no contractual agreement between the parties. *See, e.g., Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633 (2d Cir. 1956); *George W. Luft Co. w. Zande Cosmetics Co.*, 142 F.2d 536 (2d Cir. 1944).

### C.  *Contestability of U.S. Registered Trademark (Count IV)*

Count IV of Plaintiff's Complaint is a claim for cancellation of U.S. Trademark Registration No. 3,097,027 for "AFFCO & Design." AFFCO argues that the mark, owned by American, should be cancelled because AFFCO would not have dismissed its opposition to American's Application No. 76/463,007 had the parties not entered into the Undertaking, which American then breached. However, the registration of American's service mark is uncontestable and, thus, Defendant is entitled to judgment as a matter of law on Count IV.

Under 15 U.S.C. § 1065, "a trademark registration may become incontestable if and when the mark has been in continuous use for 5 years after the initial registration, there is no pending challenge to the validity of the mark, and the registrant files an affidavit with the Commissioner of Patents within one year after the expiration of the initial five-year period, affirming that the mark is still in use." *Wilhelm Pudenz, GmbH v. Littlefuse, Inc.*, 177 F.3d 1204, 1206, n. 1 (11th Cir. 1999). The validity of the mark is thereafter presumed, *Dieter v. B & H Indus. of Southwest Florida, Inc.*, 880 F.2d 322, 328 (11th Cir. 1989), and the registrant's right to use the mark is conclusive. *Wilhelm Pudenz*, 177 F.3d at 1208. The validity of the mark is only subject to eight defenses enumerated in 15 U.S.C. § 1115(b). "Once a mark has achieved 'incontestable' status, its validity cannot be challenged on the grounds that it is merely descriptive, even if the challenger can show that the mark was improperly registered initially." *Dieter*, 880 F.2d at 328. This creates a situation in which the Latham Act proscribes the courts from correcting an improper initial registration. The courts' power to "rectify the register"

under 15 U.S.C. § 1119 is limited by the specific provisions concerning incontestability. *Park'N'Fly, Inc. v. Dollar Park and Fly*, 469 U.S. 189, 203, 105 S. Ct. 658 (1985).

Trademark Registration No. 3,097,027 for "AFFCO & Design" issued to American on March 30, 2006. It was in continuous use for the following five years and American filed Combined Declarations of Use and Incontestability on February 28, 2012. The United States Patent & Trademark Office acknowledged and accepted the declarations on March 30, 2012. Plaintiff has not alleged that Defendant's service mark is subject to one of the eight enumerated defenses. Instead, Plaintiff argues that the benefit of incontestable status accrues only to the registrant and there is a question of whether Defendant, a New York corporation with its principal place of business in Florida, was the registrant because in filing its application a company of the same name as Defendant selected Florida as its place of incorporation. Plaintiff argues that the "inconsistency in legal entity" at least raises a triable issue of material fact.

The Court disagrees. Assuming arguendo that there was a dispute as to which American Fine Foods Corporation was entitled to the presumptive right to use the mark, the mark would still retain its incontestable status and this Court still would be unable to provide AFFCO the relief it seeks. The question implicated by a request to cancel a federally registered mark is not whether Defendant is the presumptive owner of the mark, but whether Plaintiff may challenge the registration. Because the mark has become incontestable, Plaintiff may only seek to cancel the mark pursuant to 15 U.S.C. 1115(b). Plaintiff, however, fails to plead any of these enumerated defenses to incontestability; an

"inconsistency" in a filing with the USPTO, without further allegations of fraud, is not a recognized defense. Thus, Plaintiff cannot prevail on Count IV as a matter of law.

### IV. CONCLUSION

Accordingly, after careful consideration and the Court being otherwise fully advised, it is **ORDERED**, **ADJUDGED**, and **DECREED** that Defendant's Motion for Summary Judgment **(DE #25)** is hereby **GRANTED in part and DENIED in part**. Judgment against Plaintiff is **GRANTED** as to Counts II and IV, which are **DISMISSED with prejudice**. Judgment against Plaintiff is **DENIED** as to Counts I and III.

Having dismissed Count IV, the Court lacks jurisdiction under federal trademark law, and it is unclear whether Plaintiff alleges damages in the remaining counts that exceed $75,000 for purposes of diversity jurisdiction. Accordingly, it is further **ORDERED**, **ADJUDGED**, and **DECREED** that the parties **SHALL** file briefs and legal memorandum on the issue of the Court's jurisdiction. Plaintiff's brief shall be due within twenty (20) days of this Order to be replied and responded to by Defendant within seventeen (17) days thereafter and a reply brief, if one be appropriate, by Plaintiff seven (7) days thereafter.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 20th day of December, 2012.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

**Cc:**

***Counsel for Plaintiff***
**Burton S. Ehrlich**
Ladas & Parry
224 S Michigan Avenue
Suite 1200
Chicago, IL 60604
312-427-1300
Email: burtone@ladas.net

**David C. Brezina**
Ladas & Parry, LLP
224 S. Michigan Avenue
Suite 1600
Chicago, IL 60604
312-427-1300
Email: dbrezina@ladas.net

**John Otto Sutton**
Jamerson Sutton & Surlas
2655 Le Jeune Road
Penthouse 2
Coral Gables, FL 33134
305-448-1295
Fax: 446-5236
Email: alex@jamersonsutton.com

***Counsel for Defendant***
**Arlen L. Olsen**
Schmeiser, Olsen & Watts, LLP
22 Century Hill Drive
Suite 302
Latham, NY 12110
518-220-1850
Fax: 480-655-9536
Email: aolsen@iplawusa.com

**Autondria S. Minor**
Schmeiser, Olsen & Watts, LLP
22 Century Hill Drive
Suite 302
Latham, NY 12110

518-220-1850
Email: aminor@iplawusa.com

**William Rafael Trueba, Jr.**
Espinosa | Trueba PL
3001 SW 3rd Avenue
Miami, FL 33129
305-854-0900
Fax: 305-285-5555
Email: wtrueba@etlaw.com